UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN STEPTOE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-3427 |
| | § | |
| JPMORGAN CHASE BANK NA, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment (Doc. 15) filed by Defendant JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance LLC ("JPMC," or "Defendant"). Plaintiff Steven Steptoe ("Steptoe," or "Plaintiff") filed a response (Doc. 18), and Defendant filed a reply (Doc. 20).

Having considered the parties' submissions, the facts in the record, and the applicable law, the Court finds that the motion should be granted.

### I. Background

On August 8, 2007, Plaintiff Steven Steptoe applied by phone for a home equity loan (Doc. 15-2 Ex. J.) and, on August 29, 2007, executed a Texas Home Equity Fixed/Adjustable Rate Note (the "Note") (Doc. 15-1 Ex. B) promising to pay the principal amount, $184,000, plus interest, to Chase Bank USA, N.A. Mot. 3. Also on August 29, 2007, Steptoe and his wife, Patricia Carballo, signed several additional documents. To secure payment of the Note, they executed a Texas Home Equity Security Instrument (the "Deed of Trust") (Doc. 15-1 Ex. C), which encumbered the property located at 1908 Taft Street, Houston, Harris County, Texas 77006 (the "Property"). Mot. 4. They executed an Acknowledgment of Fair Market Value of

Homestead Property (the "Acknowledgment of Fair Market Value") (Doc. 15-3 Ex. L), which listed the appraised value of the Property as $230,000; an Acknowledgement of Receipt of Documents (the "Acknowledgment of Receipt") (Doc. 15-3 Ex. M), which stated that they received a copy of every document they signed at closing; and a Texas Home Equity Affidavit and Agreement (the "Affidavit and Agreement") (Doc. 15-1 Ex. D). Mot. 4-5.

On September 24, 2010, Chase Bank USA, N.A., executed an Assignment of Note and Deed of Trust (Doc. 15-2 Ex. K), thereby assigning, effective May 16, 2009, the Note and Deed of Trust to JPMC for value. Mot. 5.

On August 26, 2011, Steptoe filed his Original Petition (Doc. 1-2) in the 80th Judicial District of Harris County, Texas, alleging violations of the Texas Constitution, article XVI, section 50(a)(6). Steptoe alleged three specific violations: (1) that the principal of the loan at the time it was made exceeded 80 percent of the fair market value of the home; (2) that the loan closed before the twelfth day after the date that Steptoe submitted his loan application to the lender; and (3) that Steptoe did not receive a copy of the final loan application and all final executed loan documents at closing. Original Petition ¶ 8. On September 21, 2011, JPMC removed the action to this Court, *see* Notice of Removal (Doc. 1), and, on October 31, 2012, filed its motion for summary judgment.

## II. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be

resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.

The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be admissible at trial, *Celotex*, 477 U.S. at 324.

### III. Analysis

In this diversity action, the Court must apply federal procedural law and state substantive law, specifically the Home Equity Constitutional Amendment of the Texas Constitution. *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir. 2010). Because the loan at issue was executed on August 29, 2007, and, effective November 6, 2007, various changes were made to the Texas Constitution, article XVI, section 50(a)(6), the Court cites the version that was in effect on August 29, 2007, where appropriate. *See id.* at 787.

#### A. Fair Market Value

Plaintiff alleges that the principal of the loan at the time it was made exceeded 80% of the fair market value of the home in violation of section 50(a)(6)(B). Original Petition ¶ 8.a. The

Texas Constitution provides that:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
> . . . .
> (6) an extension of credit that:
> . . . .
> (B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made; [and]
> . . . .
> (Q) is made on the condition that:
> . . . .
> (ix) the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made.

Tex. Const. art. XVI, § 50(a)(6). It further provides that "[a] lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value" if (1) the value is estimated in accordance with applicable state or federal requirements and (2) "the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect." Tex. Const. art. XVI, § 50(h).

There is no controversy with regard to either the amount of the credit extended ($184,000) or the amount listed in the Acknowledgment of Fair Market Value ($230,000), or with regard to the percentage that the former is of the latter: exactly 80%. Nor is there any dispute whether the fair market value was determined by an appraisal done in accordance with state requirements. The only question, therefore, is whether there is a genuine dispute of material fact as to the second prong of section 50(h): that Defendant had actual knowledge that the stated value of $230,000, as of August 29, 2007, was incorrect.

Plaintiff argues that Defendant did have such knowledge and offers three additional

appraisals in support: (1) the "Harris County Appraisal" for the 2007 tax year (Doc. 1-2 Ex. C); (2) the "Fontana Appraisal," conducted on November 7, 2006 (Doc. 18-7); and (3) the "Prigmore Appraisal," a retrospective opinion of the August 29, 2007, value given on April 22, 2012 (Doc. 18-6). None of these documents raise a genuine dispute of material fact. First, the Harris County Appraisal is relevant for the purpose of assessing property tax—but not for establishing market value. *Penrod v. Bank of New York Mellon*, 824 F. Supp. 2d 754, 760 (S.D. Tex. 2011) (citing *Hous. Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686 (Tex. Civ. App. 1977)). Second, the Fontana Appraisal, estimating the value as $183,000 on November 7, 2006, carries little probative weight. Assuming that this appraisal was correct, it still cannot prove that the increased value one year later was incorrect. Although the increase of $47,000 is undoubtedly significant, such a change is hardly impossible: Plaintiff's own evidence, in fact, is proffered to show a one-year change (in the other direction) of $68,000. Third, that evidence—the Prigmore Appraisal—carries no weight with respect to Defendant's actual knowledge years earlier.

At the closing on August 29, 2007, Plaintiff signed the Acknowledgment of Fair Market Value, stating that "[o]n the date of the closing, the fair market value of the Property is $230,000." Four years later, through the prism of retrospection, Plaintiff argued that this valuation was wrong. Retrospection, however, cannot prove that the Defendant knew it to be wrong at the time, let alone that the appraised value was in fact wrong on that specific day. There is no evidence creating a genuine dispute of material fact, and Defendant is entitled to summary judgment on this claim.

### B. Twelve-Day Rule

Plaintiff alleges that Defendant violated section 50(a)(6)(M) because the "application was signed on August 29, 2007—the same day the loan was closed and clearly in violation of the 12-

day rule." Original Petition ¶ 8.b. In August 2007, the relevant portion of the Texas Constitution read:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
> . . . .
> (6) an extension of credit that:
> . . . .
> (M) is closed not before:
>
> (i) the 12th day after the later of the date that the owner of the homestead submits an application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section.

Tex. Const. art. XVI, § 50(a)(6)(M)(i) (amended 2007). Although subsection (i) contains two alternative clauses, it is clear that Plaintiff's claim is based on the first clause: that the extension of credit was closed before the twelfth day after he submitted his loan application. Since both parties agree that the loan was closed on August 29, 2007, the only question is on what date the application was submitted.

"Because the broad term 'application' . . . in § 50(a)(6)(M)(i) . . . encompass[es] oral applications, including telephonic applications," *Cerda*, 612 F.3d at 788, the only date that properly answers that question is August 8, 2007, when Plaintiff applied for his loan by telephone. That date—21 days before the loan was closed—is undisputed, and the signing date upon which Plaintiff's claim is based is immaterial. Therefore, there is no dispute as to any material fact and Defendant is entitled to judgment on this claim as a matter of law.

### C. Executed Loan Documents

Plaintiff alleges that Defendant violated section 50(a)(6)(Q)(v) because Plaintiff "did not receive a copy of the final loan application and all final executed loan documents." Original Petition ¶ 8.c. In August 2007, the Texas Constitution provided that:

> (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
> . . . .
> (6) an extension of credit that:
> . . . .
> (Q) is made on the condition that:
> . . . .
> (v) the lender, at the time the extension of credit is made, provide the owner of the homestead a copy of all documents signed by the owner related to the extension of credit.

Tex. Const. art. XVI, § 50(a)(6)(Q)(v) (amended 2007). Even if there is a violation of this section, however, a lender can cure this defect by delivering the required documents to the borrower within 60 days of being notified of such violation. Tex. Const. art. XVI, § 50(a)(6)(Q)(x)(d). And "[a] lender or holder who complies with Section 50(a)(6)(Q)(x) to cure a violation before receiving notice of the violation from the borrower receives the same protection as if the lender had timely cured after receiving notice." 7 Tex. Admin. Code § 153.95 (2004).

In this case, Defendant shows, and Plaintiff does not dispute, that Plaintiff first sent notice he had not received a copy of the final loan application by a letter dated June 17, 2011 (Doc. 15-3 Ex. O), and that Defendant had already provided Plaintiff with a copy of the final loan application, as well as all other relevant documents, by letters dated March 15 (Doc. 15-3 Ex. R), April 4 (Doc. 15-5 Ex. S), April 6 (Doc. 15-6 Ex. T), and April 8, 2011 (Doc. 15-7 Ex. U). Mot. 14-15. Moreover, on August 29, 2007, Plaintiff and his wife signed the Acknowledgment of Receipt, stating that they "received a copy of each and every document that [they] signed at closing." That Plaintiff received copies of all relevant documents within the time allotted by the Texas Constitution is not in dispute; therefore, Defendant is entitled to judgment on this claim as a matter of law.

In sum, there is an absence of evidence necessary to support elements of each of Plaintiff's three claims. Consequently, Plaintiff cannot defeat summary judgment or obtain the

declaratory or injunctive relief he seeks.

### **IV. Conclusion**

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's claims are DISMISSED.

SIGNED at Houston, Texas, this 13th day of February, 2013.

                            MELINDA HARMON
                 UNITED STATES DISTRICT JUDGE